IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ERIC HENRY                                                                                        PLAINTIFF

vs.                                                                    CIVIL ACTION NO. 3:14-CV-42-SAA

COMMISSIONER OF SOCIAL SECURITY                                                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Eric Henry seeks judicial review under 42 U.S.C. § 405(g) of the decision of the Commissioner of Social Security granting his application for disability insurance benefits (DIB) under Section 223 of the Social Security Act as of November 29, 2009 and then terminating them as of January 1, 2011. Plaintiff protectively filed an application for DIB on July 14, 2010 alleging disability beginning on November 29, 2009. Docket 17, p. 129-133. His claim was denied initially on June 6, 2010, and upon reconsideration on October 25, 2010. *Id.* at 80-82, 84-85. He filed a request for hearing and was represented by counsel at the hearing held on March 1, 2012. *Id.* at 49-77. The Administrative Law Judge (ALJ) issued a partially favorable decision granting benefits for a brief period of time on August 24, 2012, (Docket 17, p. 27-45) and on December 26, 2013, the Appeals Council denied plaintiff's request for a review. *Id.* at 1-4. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

**I. FACTS**

Plaintiff was born on July 14, 1975 and completed the 12th grade. Docket 17, p. 133-37. He was thirty-six at the time of the hearing. *Id.* at 49. Plaintiff's past relevant work was as a

1

carpenter and industrial truck operator. *Id.* at 70-71. Plaintiff contends that he became disabled before his application for benefits due to "injuries to both feet as a result of automobile accident." *Id.* at 137.

The ALJ granted plaintiff benefits from November 29, 2009 through December 31, 2010, but concluded that plaintiff experienced medical improvement as of January 1, 2011 and therefore was not entitled to benefits after December 31, 2010. Docket 17, p. 41-42. In reaching this decision, the ALJ concluded plaintiff still suffered from the same severe impairments and could not perform his past relevant work, but that by January 1, 2011, plaintiff's condition had improved to the point that he could perform jobs which existed in significant numbers in the national economy. Consequently, plaintiff was not disabled after December 31, 2010. The ALJ went on to explain his finding that plaintiff was less than fully credible in describing the intensity, persistence and limiting effects of his claimed symptoms after December 31, 2010 and that plaintiff's treating physician had previously noted that he expected plaintiff to be able to return to work on September 17, 2010. *Id.* at 42-45.

After evaluating all of the evidence in the record, including plaintiff's testimony, the ALJ held that plaintiff's physical and mental impairments, considered singly and in combination, did not significantly limit his ability to perform basic work activities after January 1, 2011. As a result, the ALJ concluded that plaintiff was not disabled under the Social Security Act as of January 1, 2011. *Id.* at 45. Plaintiff claims that the ALJ committed multiple errors, but his complaint is that the ALJ improperly determined that his disability ended December 31, 2010. Because the errors plaintiff asserts concern the ALJ's determination that the disability did not continue, the below review will only address the eight step sequential evaluation process utilized

to determine whether a disability continues.

## II.  STANDARD OF REVIEW

The Social Security Administration may terminate benefits if the agency concludes, after reviewing a claimant's case, that the claimant's impairment "has ceased, does not exist, or is not disabling . . . ." 42 U.S.C.A. 423(f).  In a typical social security case, where the issue is whether a claimant is disabled and should therefore be granted Social Security benefits in the first place, the Commissioner (through an ALJ) applies a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).  However, where the Commissioner is deciding whether to terminate existing benefits due to an alleged medical improvement, 20 C.F.R. § 404.1594(f) prescribes an eight-step evaluation process to determine

(1) whether claimant is engaging in substantial gainful activity;

(2) if not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

(3) if impairments do not meet a listing, whether there has been medical improvement;

(4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work;

(5) if there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;

(6) if medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;

(7) if the claimant has a severe impairment, whether the claimant can perform past relevant work; and

(8) if the claimant cannot perform past relevant work, whether the claimant can perform other work.

After applying the five-step analysis and concluding that plaintiff was entitled to benefits for the period from November 29, 2009 through December 31, 2010, the ALJ applied the eight-step analysis to plaintiff's case to evaluate whether his his disability continued after December 31, 2010. At step one, he determined plaintiff had not engaged in any substantial work activity since November 29, 2009. Docket 17, p. 34. At step two, he found plaintiff suffered from the same severe impairments ["fractures of the feet and ankles and hypertension"] after his disability ended that he had during the time that he was entitled to benefits, but that these impairments did not meet or medically equal a listing. *Id.* at 40. Proceeding to step three, the ALJ concluded that plaintiff had experienced medical improvement which was demonstrated by plaintiff's failure to seek regular medical care, the lack of prescription pain medication sought and consumed following surgery, and that plaintiff had made only two office visits to Dr. Thorderson involving minor complaints. *Id.* at 41-42.

At step four, the ALJ found plaintiff's medical improvement was related to his ability to work because plaintiff "experienced an increase in his residual functional capacity ("RFC"), a finding which dictated that the analysis skip to step six[1] where, despite the ALJ's determination that plaintiff's impairments continued to be categorized as severe, he concluded that the impairments did not significantly limit claimant's ability to perform a broad range of light work. *Id.* at 42. The ALJ also concluded that as of January 1, 2011, plaintiff had the RFC to "lift 20 pounds occasionally and 10 pounds frequently. He can stand and walk for six hours and can sit for six hours in an eight-hour workday but he requires a sit/stand option. The claimant in addition can only occasionally engage in climbing, balancing, stooping, crouching, kneeling, and

---

[1]*See 20* C.F.R. § 404.1594(f)(4).

crawling." *Id.* At step seven, the ALJ found that plaintiff was unable to perform his past relevant work as a carpenter and an industrial truck operator, *id.* at 43, but in light of testimony from the VE he found at the eighth and final step that plaintiff was able to perform jobs as a parking lot attendant, ticket seller or ticket taker. *Id.* at 44.

B. Medical Improvement

Plaintiff claims the ALJ erred in substantiating the medical improvement finding by substituting his own judgment for that of treating physician Dr. Thorderson and by failing to apply the proper legal standards. Docket 21. Making a determination of medical improvement that terminates benefits requires an ALJ to provide "expert medical evidence substantiating such a conclusion." *Groskreutz v. Barnhart*, 108 Fed. Appx. 412, 417 (7th Cir. 2004); *see also Loza v. Apfel*, 219 F.3d 378, 393, 395 (5th Cir. 2000); 20 C.F.R. § 404.1594(c)(1) ("Medical improvement . . . is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).").

The ALJ gave limited weight to Dr. Thorderson's opinion that plaintiff could expect to remain unemployed until at least September 2011, but ultimately declined to adopt it because he felt it was "inconsistent with the record evidence for that period." Docket 17, p. 38. There is no other opinion from Dr. Thorderson as to plaintiff would be able to work after September 2011. The only other medical opinion for this time period is a consultative examination conducted by Dr. Robert Shearin in November 2011 at the ALJ's request. Docket 17, p. 314-22. Dr. Shearin opined that plaintiff "maintains the capability of carrying out work related activities that require sitting, standing, walking short distances, lifting, carrying/handling objects, hearing, speaking,

5

and traveling." Docket 17, p. 319. Dr. Shearin rated plaintiff's pain as ranging from 4-8 on a scale of 1-10. *Id.* at 315. Dr. Shearin's Medical Source Statement concluded that plaintiff could occasionally lift 20 pounds, could not perform any frequent lifting and could stand/walk a total of 4-5 hours in a day and 15 minutes without interruption. *Id.* at 320. The ALJ only afforded Dr. Shearin's opinion limited weight because "[h]is assessment appears disproportionate to the record evidence viewed as a whole for the period beginning January 1, 2011." *Id.* Although Dr. Shearin's opinion is not as limiting as Dr. Thorderson's, it would still preclude plaintiff from working in light of the VE's testimony that plaintiff's pain as documented in the medical records and at the hearing would prevent plaintiff from being able to work. Docket 17, p. 75. It is unclear whether the other limitations provided by Dr. Shearin would prevent plaintiff from working as the ALJ did not include them in any hypothetical to the VE, and the hypothetical upon which the ALJ based his RFC allows plaintiff to lift ten pounds frequently and stand/walk for six hours in an eight-hour day.

Interestingly, the ALJ found plaintiff's subjective complaints and hearing testimony credible only for the time period between the date of the accident and December 31, 2010, but not for the period of time beginning January 1, 2011. Docket 17, p. 43. It appears that the ALJ elected to believe and therefore rely upon the testimony and opinions of witnesses and physicians which supported his opinion and discounted the testimony or opinions that did not support his opinion.

The law is clear that an ALJ "is not at liberty to make a medical judgment regarding the ability or disability of a claimant to engage in gainful activity, where such inference is not warranted by clinical findings." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000), citing *Spencer*

6

*v. Schweiker*, 678 F.2d 42, 45 (5th Cir. 1982). An ALJ may not "play doctor," *Chase v. Astrue*, 458 Fed. Appx. 553, 556-57, or reach a medical conclusion without expert medical evidence substantiating such a conclusion, *Groskreutz v. Barnhart*, 108 Fed. Appx. 412, 417 (7th Cir. 2004); *see also Loza*, 219 F.3d at 395; 20 C.F.R. § 404.1594(c)(1). Although the court is sympathetic to the difficulties involved in performing a proper continuing disability review, particularly when suspicions of a claimant's credibility arise, an ALJ's inability to reach medical conclusions without expert medical evidence remains the same.

In this case, the ALJ referred to the plaintiff's infrequent medical treatment and his choice to utilize over-the-counter pain medication to control his foot pain as a basis to discount his credibility. Although it is true that plaintiff did not seek medical attention as often after January 1, 2011, the physician visits do document severe foot pain and attempts to alleviate that pain. However, it appears that even shortly after the accident – when everyone agrees that plaintiff's pain levels were very high – plaintiff only used Aleve and Ibuprofen to control his pain as he did not like the side effects of the narcotic pain medications, and he did not want to become addicted to them. These are the only reasons that the ALJ provides to support his finding that plaintiff's disability ended. He did not afford weight to the two physicians' opinions concerning plaintiff's condition during this period of time.

The ALJ's explanation fails to provide substantial justification for finding medical improvement or for terminating claimant's disability. First, there was no expert medical or psychological evidence to demonstrate that there has been medical improvement of claimant's initial listed disability. The law is clear: an ALJ may not "play doctor," (*Chase v. Astrue*, 458 Fed. Appx. 553, 556-57) or reach a medical conclusion without expert medical evidence

7

substantiating that conclusion. *Groskreutz v. Barnhart*, 108 Fed. Appx. 412, 417 (7th Cir. 2004); *see also Loza*, 219 F.3d at 395; 20 C.F.R. § 404.1594(c)(1).

Although the ALJ claimed to rely on "the documentary record" as evidence to reach his finding that there has been medical improvement [Docket 17, p. ], the treatment records and record of the consulting examiner for the period beginning January 2011 do not support the ALJ's finding that plaintiff experienced medical improvement. Instead, the ALJ relied on his own lay deductions from a lack of medical records to conclude that plaintiff had experienced medical improvement, and he made these lay deductions while simultaneously rejecting qualified medical opinions. Thus, in making a determination that medical improvement had occurred, the ALJ reached a medical conclusion he was neither qualified to make nor substantially justified in making.

The court holds that the ALJ's decision that plaintiff has experienced medical improvement was not based on substantial evidence. At the very least, the ALJ should have sought an opinion from Dr. Thorderson, the physician with the most intimate knowledge of plaintiff's current medical condition. On remand, the ALJ will be required to obtain up-to-date medical evidence of actual medical improvement to terminate plaintiff's benefits. If no such evidence exists, plaintiff's benefits will continue. Additionally, the ALJ is instructed to consider Dr. Morris's records and opinions that were submitted to the Appeals Council and, if necessary, obtain an updated opinion from him.

## IV.  CONCLUSION

The Commissioner's determination that plaintiff experienced medical improvement will be remanded for additional review in accordance with this opinion. A final judgment in

accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 7th day of July, 2015.

                                                             /s/ S. Allan Alexander
                                                          UNITED STATES MAGISTRATE JUDGE